IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHEERS SPORTS BAR & GRILL, etc.,

                       Plaintiff,                  Case No. 3:08 CV 586

      -vs-

                                                 <u>MEMORANDUM   OPINION</u>

DIRECTV, INC.,

                       Defendant.

KATZ, J.

      This matter is before the Court on the defendant's motions to dismiss the case (Doc. 4) and to strike a declaration filed with the plaintiff's opposition to the motion to dismiss (Doc. 12). The defendant has also filed an unopposed motion for judicial notice of the fact that it is a California corporation (Doc. 6). This Court has jurisdiction pursuant to 28 U.S.C. § 1332. For the reasons discussed herein, the case is dismissed in its entirety.

**I. Background**

      By the penultimate weekend of the National Football League's 2007 regular season, the New England Patriots had attained an undefeated record through fifteen contests. The Patriots' remaining hurdle to becoming one of the NFL's only teams ever with an undefeated regular season record was the season finale match-up against the New York Giants ("the game")[1]. The

---

[1] The Court uses the phrase "the game" in this memorandum opinion to refer to the December 29, 2007 NFL contest between the Patriots and the Giants. This usage is not intended to confuse or conflict with the actual phrases "The Game" and "The Big Game," which of course refer to the more important (in this Court's opinion) annual collegiate football contest between The Ohio State University Buckeyes and the University of Michigan Wolverines. About a year prior to "the game," on November 18, 2006, "The Game" was played at Ohio Stadium ("The Horseshoe" or,

                                                                                                     (continued...)

upcoming game drew spectacular hype.  However, the game had been slotted to be shown exclusively on the NFL Network, a cable station with limited access to consumers' home televisions resulting from pricing and distribution disputes that had prevented carriers from picking up the NFL Network.  *See, e.g., NFL Enterprises LLC v. Comcast Cable Communications, LLC*, 51 A.D.3d 52, 851 N.Y.S.2d 551 (N.Y. App. Div. 2008); Mark Maske, *NFL Network Will Allow Simulcast of Patriots-Giants*, Washington Post, Dec. 27, 2007, at E6 (available at http://www.washingtonpost.com/wp-dyn/content/article/2007/12/26/AR2007122601652.html).  NFL Network was available in fewer than forty percent of American homes.  *See Pats-Giants to be first three-network simulcast game in NFL history*, ESPN.com (AP), Dec. 27, 2007 (available at http://sports.espn.go.com/nfl/news/story?id=3169075).

      High demand from fans without private access to the NFL Network led the NFL to allow two of the nation's largest networks - NBC and CBS - to simultaneously broadcast the game.  *Id*.  The broadcast of the game could then be seen by anyone with access to a network television station, without any cable payments or membership access requirements.  The game went on to become a historic win for the Patriots, a preview of the upcoming NFL Super Bowl XLII, and the

---

[1](...continued)
simply, "The Shoe") in an at least equally hyped regular season conference game between the undefeated and nationally ranked #1 Buckeye and #2 Wolverine squads.  *See* Kelly Whiteside, *Michigan vs. Ohio State: The Ultimate Showdown, Ohio State, Michigan won't trade rivalry's tradition for television cash*, USA Today, Nov. 18, 2006 ("If this game were any bigger, it would have Roman numerals after it . . .," referring to the numbering of NFL Super Bowls.)  Ohio State outplayed Michigan, displaying defensive stoutness and dazzling offensive talent, winning The Game of the Century by a score of 42-39 and earning a berth to the Bowl Championship Series National Championship.  *But cf. Waggoner v. Wal-Mart Stores, Inc.*, Case No. 1:07-CV-00703-JRN, Doc. 27 (W.D. Tex. June 3, 2008) (mistakenly referring to the 2005 BCS Championship as the "Game of the Century").  In fact, since the arrival of Coach Jim Tressel in 2001, Ohio State has dominated The Game by a record of 6-1 over the Wolverines.

most-viewed regular season game in NFL history.  *Super Bowl Could Set Record for TV Viewers*, CNBC.com (AP), Jan. 30, 2008 (available at http://www.cnbc.com/id/22913751/).  The NFL Network's coverage of the game included six hours of live pre-game coverage and devoted over sixty-five hours of coverage to it.  *All roads lead to Patriots-Giants on NFL Network and NFL.com*, NFL Press Release, Dec. 26, 2007 (available at http://www.nfl.com/nflnetwork/story?id=09000d5d8056c7d0).  The rematch in Super Bowl XLII just over a month later, when the Giants played a tight game to the end, upsetting the Patriots and giving them an 18-1 record for the season, became the most-viewed Super Bowl in NFL history, and the second most viewed television broadcast in the history of American TV.  *Record 97.5 million watch Super Bowl XLII*, MSNBC.com (AP), Feb. 4, 2008 (available at http://www.msnbc.msn.com/id/22992189/).

Defendant DIRECTV, Inc. was one of the carriers who carried and provided paying customers access to NFL Network, including exclusive NFL games.  Plaintiff Cheers Sports Bar & Grill maintained a "Commercial Choice Plus" subscription with DIRECTV that included NFL Network.  Plaintiff paid Defendant the subscription fee for December.  The contract between the parties provided the following relevant section:

> CHANGES IN PROGRAMMING SERVICE AND FEES/SERVICE RENEWAL:
> We [DIRECTV] reserve the right to change the programming packages, programming services, or other services we offer, and our prices or fees, at any time.  We may also rearrange, delete, add to, or otherwise change the services.  For any changes to the programming packages, prices, or fees that are within our control, we will notify you [the subscriber - Cheers] of the change and its effective date.  If the change is not acceptable to you, you may cancel your programming service in whole or in part; provided, however, that if you do cancel service you will not be entitled to a refund of any prepaid subscription amounts paid in connection with any DIRECTV offer or promotion.  If you do not cancel your service within 30 days, your continued receipt of any DIRECTV programming service after the effective date of change will be deemed your acceptance of that

3

> change, and you will continue to be responsible for payment. DIRECTV programming services that you subscribe to a periodic basis may be renewed automatically, provided we continue to carry the service, unless you contact DIRECTV Customer Service to cancel the services.

Service Agreement at ¶ 7. The agreement also contained a California choice of law provision.

When the NFL decided to simulcast the game on NBC and CBS, it was still also broadcast on NFL Network, and Defendant supplied those broadcasts to Plaintiff. Plaintiff brought this suit before Erie County Court of Common Pleas on December 28, 2007, and it was removed to this Court on March 6, 2008. Plaintiff alleges that Defendant breached the contract, was unjustly enriched by the paid subscription fees for December 2007, and acted in bad faith. Plaintiff seeks damages and declaratory and injunctive relief.

**II. Standard of Review**

No complaint shall be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45, (1957); *see also Pfennig v. Household Credit Servs.*, 295 F.3d 522, 525-26 (6th Cir.2002) (citing *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir.1998)). When deciding a motion brought pursuant to Fed.R.Civ.P. 12(b)(6), the inquiry is essentially limited to the content of the complaint, although matters of public record, orders, items appearing in the record, and attached exhibits also may be taken into account. *Yanacos v. Lake County*, 953 F.Supp. 187, 191 (N.D.Ohio 1996). The Court's task is to determine not whether the complaining party will prevail on its claims, but whether it is entitled to offer evidence in support of those claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court must accept all the allegations stated in the complaint as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73, 81 (1984), while viewing the complaint in the light most favorable to the plaintiff. *Scheuer*, 416 U.S. at 236. A

4

court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

**III. Discussion**

The parties disagree on which state's law should apply – California or Ohio. Plaintiff alleges that Defendant breached the contract, and, under the laws of both states, was unjustly enriched by the paid subscription fees for December 2007, and acted in bad faith. Plaintiff seeks damages and declaratory and injunctive relief also pursuant to both states' laws.

### A. Choice of Law

"The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement" unless (a) the state chosen by the parties "has no substantial relationship to the parties or the transaction and there is no reasonable basis" for the parties' choice, or (b) applying the contractual state law "would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties." *Schulke Radio Prod., Ltd. v. Midwestern Broad. Co.*, 6 Ohio St.3d 436, 438 (Ohio 1983) (*citing* Restatement (Second) of Law § 187 (1971)).

The agreement in this case has a California choice of law provision. Plaintiff argues, however, that Ohio law should apply, because applying California law would be "repugnant to and in violation of [Ohio] public policy," *Jarvis v. Ashland Oil, Inc.*, 17 Ohio St.3d 189, 192 (Ohio 1985), because "there are significant differences in the application of the law of the two states," *Tele-Save Merchandising Co. v. Consumers Distributing Co., Ltd.*, 814 F.2d 1120, 1123 (6th Cir.

1987). However, as the *Jarvis* and *Tele-Save* courts observed, the presumptions that must be made in order to disrupt a contract's choice of law provision are difficult to establish. For example, Ohio's public policy on the issue must be fundamental. Additionally, the application of the contractual state law must be shown to be contrary to that fundamental policy. *Id*. The contractually chosen state law must be shown to be repugnant to Ohio public policy and in violation of it. *Jarvis*, 17 Ohio St.3d at 192. Ohio must have "a materially greater interest than the chosen state in the determination of the particular issue." *Id*.

Plaintiff asks this Court to apply Ohio law to the extent that Plaintiff's causes of actions may be considered noncognizable under California law, which Plaintiff recognizes may apply. Specifically, the parties dispute whether the causes of action apparently plead by Plaintiff are cognizable under California and Ohio law. Defendant is a California corporation and maintains contracts in many states with customers on a national level. Ohio certainly has an interest in promoting fair dealing, comparable bargaining power, and contract enforcement, but these interests are not contradicted by the application of California law pursuant to the contract in this case. Plaintiff has not met the standard to overcome the enforcement of the California choice of law provision in the contract. As the Court will discuss below, the language of the contract itself provides a strong basis for dismissal of all of Plaintiff's claims, and the difference between reliance on Ohio or California law will ultimately not make a difference – all of Plaintiff's claims fail either way.

**B. Breach of Contract**

The Court construes this case primarily as relying on a breach of contract claim. The points that the parties debate for choice of law purposes rely in part on the determination of a

whether a breach of contract occurred. There is a contract between the parties, and the dispute that has arisen is rooted in the contract. The Court cannot ignore that, as Plaintiff appears at times to advocate.

As described above, paragraph 7 of the contract clearly allowed a change in programming and provided specific remedies, including an opt-out option, for changes under Defendant's control. More importantly, Plaintiff cannot establish that Defendant had any control over the change of programming, or that Defendant did not provide Plaintiff with a broadcast of the game as it was obliged to do – there was no exclusivity agreement in the contract. Plaintiff can point to no language that guarantees that the game was to be broadcast exclusively on one station, and that that station would be NFL Network or any other network with (temporarily) relatively limited circulation. Because Plaintiff cannot show that exclusivity was contracted, that Defendant had control of the programming change, or that Defendant did not broadcast the game, a breach of contract claim is completely unsupportable.

Plaintiff urges this Court to declare the contract ambiguous based largely on the fact that when it was faxed by or to Plaintiff, the fax header listed the wrong number of pages. This argument transcends creativity, and the Court is not willing to join Plaintiff in making that magical leap. As for the argument that paragraph 7 is ambiguous, the Court disagrees. The opt-out procedure is clear and could have been pursued by Plaintiff before filing a lawsuit if Plaintiff was dissatisfied with DIRECTV's service, and if the programming change was within DIRECTV's control.

**C. Good Faith and Fair Dealing**

Contracts impose upon the parties a duty of good faith and fair dealing, "such that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App.4th 44, 55 (Cal. Ct. App. 2002); *see also Brown v. Otto C. Epp Memorial Hosp.*, 41 Ohio App.3d 198, 199 (Ohio Ct. App. 1987).

The implied covenant of good faith and fair dealing cannot be used to create new obligations under a contract where the language of the contract does not contemplate such obligations. *Manneck v. Lawyers Title Ins. Corp.*, 2 Cal. 4th 342, 373 (Cal. 1992); *Carma Developers (California), Inc. v. Marathon Development California, Inc.*, 2 Cal. 4th 342 (Cal. 1992); *C. Pappas Co. v. E & J Gallo Winery*, 610 F. Supp. 662, 666 (E.D. Cal. 1985) ("'The courts cannot make better agreements for parties than they themselves have been satisfied to enter into or rewrite contracts because they operate harshly or inequitably. . . . Parties have the right to make such agreements.'") (citing *Walnut Creek Pipe Distributors, Inc. v. Gates Rubber Co.*, 228 Cal.App.2d 810, 815 (Cal. Ct. App. 1964)).

Following Plaintiff's argument, the fruit of this contract appears to be the broadcasting of the game on NFL Network exclusively to other networks. As previously discussed, there is no basis for this right in the contract, and it was not within Defendant's control. This exclusivity, according to Plaintiff, would have led to higher food and beverage sales at establishments that had the Commercial Choice Plus package from DIRECTV. Plaintiff appears to suggest that these damages resulted from Defendant's failure to pursue exclusivity of the broadcast from NFL Network or the NFL as opposed to accommodating or complying with the NFL's decision to simulcast the game on the other networks. If this is a side argument, albeit a potentially intriguing

8

one, it is lacking in legal and evidentiary support from the Plaintiff. If it is a disguised cause of action for some contractual tort or some other cause related to the contract, then Plaintiff appears to be suing in this Court to enforce an agreement that Plaintiff has not referenced or produced and to which Plaintiff is not a party. Either way, there is no evidence of a breach of the agreement between Plaintiff and Defendant, and no support for the allegation of breach of good faith and fair dealing by DIRECTV toward Cheers. Plaintiff has not even presented a logical theory by which DIRECTV could have pursued exclusivity from the NFL, and has not suggested that a contract between Defendant and the NFL with regard to NFL Network was any different from the contract between DIRECTV and Cheers with regard to the lack of broadcast exclusivity and change of programming. In other words, Defendant did not have a duty to ensure exclusivity under the DIRECTV-Cheers contract. This Court will not create that duty and allow Plaintiff to pursue it outside of the contract (under the guise of good faith and fair dealing) when it is negated by the contract. *See* Pl.'s Br., Doc. 10 at 5 ("When Defendant failed to [uphold its end of the contract], it breached its duty of good faith and fair dealing.").

### D. Unjust Enrichment

Plaintiff argues that Defendant was unjustly enriched by the payment of Commercial Choice Plus subscription fees for December 2007 that were not refunded.

Unjust enrichment is an equitable doctrine that allows a party to pursue the reasonable value of services rendered upon another party when a benefit is conferred without an exchange of just compensation. "Under Ohio law, a plaintiff must prove the following elements to succeed in an action for unjust enrichment: (1) a benefit conferred by the plaintiff upon the defendant, (2) defendant's knowledge of the benefit, and (3) improper retention of the benefit without the

9

defendant's rendering of payment to plaintiff for same." *Metz v. Am. elec. Power Co.*, 2007-Ohio-3520 at ¶43 (Ohio Ct. App. 2007) (citing *Hummel v. Hummel*, 133 Ohio St. 520, 527 (Ohio 1938)). A claim for unjust enrichment may be pled in the alternative when the existence of an express contract is in dispute and may be maintained despite the existence of an express contract where there is evidence of fraud, bad faith, or illegality. *Resource Title Agency, Inc. v. Morreale Real Estate Services, Inc.*, 314 F.Supp.2d 763, 772 (N.D. Ohio 2004).

"[T]here is no cause of action in California for unjust enrichment." *Melchoir v. New Line Productions, Inc.*, 106 Cal. App. 4th 779, 794 (Cal. Ct. App. 2003). Furthermore, "as a matter of law, a quasi-contract action for unjust enrichment does not lie where express binding agreements exist and define the parties' rights." *California Medical Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.*, 94 Cal. App. 4th 151, 172-173 (Cal. Ct. App. 2001). "'When parties have an actual contract covering a subject, a court cannot – not even under the guise of equity jurisprudence – substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract.'" *Id.* (citing *Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, 41 Cal. App. 4th 1410, 1419-20 (Cal. Ct. App. 1996)).

Under California law, Plaintiff's unjust enrichment claim fails on its face because a contract was in place between the parties in this case, and thus no cause of action for unjust enrichment can exist. Under Ohio law, Plaintiff has presented no evidence of fraud, bad faith, or illegality. Plaintiff alleges misrepresentation of exclusivity, but cannot reference any document or statement that suggests that Defendant represented that it would retain and provide exclusive access to NFL Network and the game. Any number of scenarios could have occurred to change the programming (as contemplated by the contract), and one such situation did occur, and it was

not under the control of Defendant. Neither has Plaintiff shown that Defendant's retention of the December 2007 charges was "improper." The charges were allowed by the contract, DIRECTV did broadcast the game, and Plaintiff did not adjust or cancel its subscription with DIRECTV (even if the change had been in Defendant's control). Plaintiff's claim for unjust enrichment fails under both Ohio and California law.

### E. Declaratory and Injunctive Relief

The Court has found in favor of Defendant on all substantive causes of action and hereby dismisses them. Declaratory and injunctive relief cannot issue because Plaintiff has not established a single cause of action or violation of any contract or duty by Defendant.

## IV. Conclusion

For the reasons discussed herein, Defendant's motions to dismiss (Doc. 4) and for judicial notice (Doc. 6) are hereby granted. Plaintiff's motion to strike (Doc. 12) is hereby denied as moot.

IT IS SO ORDERED.

                                             s/ *David A. Katz*
                                             DAVID A. KATZ
                                             U. S. DISTRICT JUDGE